[No. D013627. Fourth Dist., Div. One. Aug. 12, 1993.]

THE PEOPLE, Plaintiff and Respondent, v.
RAFAEL GARCIA GARCIA, Defendant and Appellant.

[No. D018193. Fourth Dist., Div. One. Aug. 12, 1993.]

In re RAFAEL GARCIA GARCIA, on Habeas Corpus.

**COUNSEL**

Laurel M. Nelson, under appointment by the Court of Appeal, and John J. Cleary for Defendant and Appellant and for Petitioner.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, and Kenneth C. Byrne, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**TODD, Acting P. J.**—Rafael Garcia Garcia was convicted of driving under the influence of alcohol and causing an injury. (Veh. Code,[1] § 23153, subds. (a) and (b).) The trial court sentenced Garcia to three years in prison and later stayed execution of the prison commitment pending appeal. Garcia has appealed his convictions and also filed a petition for writ of habeas corpus in this court, alleging, inter alia, his conviction was obtained by means of "false evidence" and the offices of the District Attorney for San Diego County (the District Attorney) and the Attorney General withheld exculpatory evidence.

---

[1] All statutory references are to the Vehicle Code unless otherwise specified.

We issued an order to show cause why the relief requested by Garcia in his petition should not be granted and subsequently appointed a referee to take evidence and make findings of fact on certain factual issues pertaining to the petition.

As we shall explain, we have determined the two prosecution offices committed *Brady* error (*Brady* v. *Maryland* (1963) 373 U.S. 83 [10 L.Ed.2d 215, 83 S.Ct. 1194]) by withholding exculpatory evidence, and Garcia has established his claim to relief on that ground. We further determine that the appropriate disposition is vacation of the judgment of conviction. Accordingly, we will grant the petition.

### FACTUAL AND PROCEDURAL BACKGROUND

At approximately 8:45 p.m. on April 2, 1990, Dionisio Acosta and a friend were pushing a disabled vehicle on the emergency lane of Old Highway 395, when Acosta and his disabled vehicle were struck by Garcia's truck. A third vehicle struck the rear of Garcia's truck. Garcia testified his truck was struck by the third vehicle and the impact thrust his truck forward into Acosta's vehicle. The driver of the third vehicle fled the scene. Michael Simpson, another motorist, testified that immediately before the collision he saw three sets of headlights facing in his direction: the second vehicle was "almost right on top of" the first vehicle, and the third vehicle was about 10 car lengths back.

Two California Highway Patrol (CHP) officers responding to the accident scene formed the opinion Garcia was intoxicated. According to expert witness testimony, Garcia's blood-alcohol level at the time of the accident was .32 percent. As a result of the injuries he suffered, Acosta lost his left leg below the knee.

CHP Officer Theodore Mason, a reconstruction accident expert, went to the accident scene several months later; he also reviewed photographs of the vehicles in the collision, and the accident report. Although Mason initially estimated Garcia's speed at the time of the accident at 45 miles per hour, he testified at trial that Garcia was traveling at speeds up to 65 miles per hour, but at least 56.1 miles per hour. That expert opinion was allegedly the basis for the violation of driving at an unsafe speed (§ 22350) that was one of the elements of the offense charged in section 23153.[2]

On November 8, 1990, the jury returned guilty verdicts. On December 6, 1990, the trial court sentenced Garcia to prison. His notice of appeal was

---

[2]The parties dispute whether the additional element of the section 23153 offense was, as petitioner contends, exceeding the general speed limit of 55 miles per hour (§ 22349), or as

timely filed on January 2, 1991. The judgment imposing Garcia's sentence was reversed by this court pursuant to stipulation of counsel in an opinion filed May 29, 1992. (D013627.) Thereafter, on July 2, 1992, this court requested the Supreme Court to grant review and remand the case to this court for further proceedings. The Supreme Court granted the request. Subsequently, this court vacated the opinion of May 29, 1992, and the appeal was reinstated.

The instant petition for writ of habeas corpus was filed January 11, 1993. The current petition relates principally to the expert testimony presented by Mason and is based upon claims that at the time the stipulated reversal of the sentence in the underlying case was negotiated in May 1992 representatives of both the District Attorney and the Attorney General were aware that since June 1991 Mason was no longer being used as a accident reconstruction expert because of faulty and improper calculations. The petition further claims this information about Mason constituted exculpatory evidence, and the prosecuting agencies negotiated or acquiesced in the stipulated reversal of sentence in order to prevent exposure of the evidence.

To assist this court, we appointed Superior Court Judge Thomas J. Whelan as a special referee to take evidence and make findings of fact responsive to the following questions:

"(1) Was the District Attorney or Attorney General in possession of exculpatory material relating to testimony by Officer Theodore Mason at and before the proposed settlement was negotiated?

"(2) If so,

"a. What is the nature of the exculpatory evidence?

"b. When was the exculpatory evidence first known to (1) the District Attorney and (2) the Attorney General?

"c. In what way was the exculpatory evidence material to the issue of guilt?"

The referee conducted hearings on May 10, 11, 12, 13 and 14, 1993. The following facts were established at the hearing:

On April 15, 1991, the Oceanside office of the CHP asked the Los Angeles-based Multi-Disciplinary Accident Investigation Team (MAIT) to

the prosecution contended, violating the basic speed law (§ 22350) or making an unsafe lane change (§ 22107). The jury was instructed on section 22350, not section 22349.

review a traffic accident because of anticipated civil litigation against the State of California. As a result of that review, MAIT determined the drag factor used by Mason was too high. Subsequently, the CHP suspended Mason from performing accident reconstruction because his methods were not consistent with current standards in the field. Mason acknowledged a written order of suspension on June 17, 1991.

Donald MacNeil, the supervising deputy district attorney of the Vista branch, learned of faulty calculations by Mason after the MAIT evaluation was completed. MacNeil assigned Robert Sullivan, the deputy district attorney in charge of the felony trial division in Vista, to compile a list of cases in which Mason was involved. Working from computer records of cases in which Mason had been subpoenaed, Sullivan found 10 cases. Those cases and an 11th pending case were listed in a May 16, 1991, letter sent by MacNeil to Captain R.T. Phulps of the Oceanside CHP office; Garcia's case, in which Mason was not subpoenaed, was not included. MacNeil's letter also requested additional information, including whether there was reason to suspect Mason's findings in closed cases.

Phulps responded on June 12, 1991, stating it was the CHP's belief that Mason's speed calculations on closed cases was not consistent with current procedures and including a list of 91 cases in which Mason testified from April 1971 to March 1991 as well as a list of the 8 most recent cases in which Mason testified. Garcia's case was on both of these lists.

In the summer of 1991, MacNeil assigned Deputy District Attorney Peter Longanbach to review a handwritten list of 12 cases involving Mason. The list did not include Garcia's case. Longanbach completed his review in October 1991, finding problems with Mason's work in five of the twelve cases. He noted MAIT had evaluated two of the cases and the problems disclosed in the MAIT reports were disclosed to defense counsel in these two cases. One of the remaining five cases had been dismissed because the defendant's vehicle speed was attributable to a faulty cruise control. Mac-Neil wrote to Phulps on November 6, 1991, requesting MAIT to review the remaining two of the five problem cases identified by Longanbach. MAIT reviewed one of the cases and found Mason's calculations in error; this report was turned over to defense counsel on February 6, 1992. As to the fifth problem case identified by Longanbach, the CHP did not undertake a review because it said that Mason did not submit a report; however, Longanbach determined that Mason did prepare a report in that case.

On May 4, 1992, Laurel Nelson, Garcia's appellate counsel, and Deputy Attorney General Nancy Palmieri, who had been assigned Garcia's appeal,

discussed the possibility of settling the appeal. Neither attorney suggested any particular procedure to follow in this regard, but agreed to explore the feasibility of settlement.

Palmieri proceeded by discussing this possibility with Senior Assistant Attorney General Gary Schons, who is in charge of the criminal division of the Attorney General's Office in San Diego. Among other things, Schons told Palmieri to contact the District Attorney's office to obtain its views on the matter.

Both Palmieri and Nelson contacted this court to discuss the possibility of settlement and were informed that there was a recognized vehicle to accomplish this, namely a stipulated partial reversal.

On May 4, 1992, Palmieri telephoned Deputy District Attorney Jeffrey Fraser, who had tried the Garcia case. Fraser, who had since been transferred to the District Attorney's downtown office, told Palmieri there would be problems with a retrial because it would be difficult to locate the victim, who was an illegal alien, and the prosecution's expert witness, Mason, would not be available.[3]

On May 5, 1992, Palmieri contacted Deputy District Attorney Timothy Casserly, who was acting in a supervisory role in the Vista office, and briefed him on the appellate issues in the case. Mason was not discussed in this initial conversation, but in a subsequent discussion, one or two days later, Casserly told Palmieri that Mason was no longer being used by the CHP as an accident reconstruction expert because he used a wrong formula in one case. Casserly also told her that a review had been conducted of all the cases in which Mason had testified and defense counsel had been notified in those cases in which Mason had erred. Casserly said he was not aware of any of the specifics and suggested Palmieri contact MacNeil or Longanbach for details. Casserly did not tell Palmieri that Garcia's case had been reviewed and found to be correct.

Next, Palmieri told Schons that Mason was no longer being used because he had made errors in his calculations. She added she believed there were no problems in Garcia's case because defense counsel would have been contacted if there were, and defense counsel had not been contacted.

Schons then discussed the proposed stipulated partial reversal with MacNeil. While the two mentioned Mason's unavailability for retrial, they did

---

[3]In a May 7, 1992, memorandum to Schons, Palmieri said, among other things, that Fraser had told her that Mason was no longer employed by the District Attorney's office. Fraser has disputed the accuracy of Palmieri's memorandum on this point as well as others.

not discuss Mason's speed calculations in Garcia's case. On May 8, 1992, MacNeil, after discussing appeal and trial issues with various members of the District Attorney's office, decided to agree to the proposed stipulated partial reversal for purposes of resentencing only. In an entry on the progress report in the District Attorney's case file, MacNeil wrote: "Main factors were absence of chief witness if retrial ordered. Ted Mason is a necessary witness, The DC [defense counsel] is incompetent as alleged in the habeas." MacNeil, however, testified he considered the unavailability of Mason for retrial to be a minor factor in agreeing to the stipulated settlement.

Nelson and Palmieri proceeded to negotiate a settlement of the appeal. Under their stipulation, Garcia abandoned his appeal and writ of habeas corpus and waived any further right to appeal and/or collaterally attack the conviction; in return, the sentencing was to be reversed and remanded to the superior court for a new sentencing hearing. On May 29, 1992, this court filed on opinion accepting the stipulation; the opinion was later vacated as related above.

On May 26, 1993, the referee filed with this court a written report based on the testimony presented at the hearing and his review of the evidence. Among other things, the referee said (1) there was no evidence Mason falsified evidence or altered data in order to reach a predetermined result in any case, including Garcia's, (2) there was no evidence Garcia's case was intentionally omitted from the list of cases reviewed by Longanbach,[4] and there was no evidence the stipulated partial reversal was entered to conceal problems with Mason from Garcia. The referee also said: "At the time the Stipulated Partial Reversal was being negotiated, both the District Attorney and Attorney General had actual knowledge that Officer Mason was no longer available to testify as an accident reconstruction expert. Both agencies also had actual knowledge that his unavailability was due to errors in his speed calculations in unrelated cases. While neither of these facts constitute exculpatory evidence, per se, their existence was constructive notice that exculpatory evidence may exist in [Garcia's] case."

The referee went on to say the law does not require disclosure of facts that may or may not lead to exculpatory evidence. Accordingly, the referee found "[n]either the Attorney General nor the District Attorney had actual knowledge of exculpatory evidence in [Garcia's] case at or before the time the Stipulated Partial Reversal was negotiated."

---

[4]The referee found Garcia's case was not included on the list of those reviewed by Longanbach because that list was compiled from subpoena records and Mason was not subpoenaed in Garcia's case.

## DISCUSSION

In *Brady* v. *Maryland, supra,* 373 U.S. 83, 87 [10 L.Ed.2d 215, 218-219], the United States Supreme Court held "the suppression by the prosecution of evidence favorable to an accused upon request violated due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."

In *In re Ferguson* (1971) 5 Cal.3d 525, 532-533 [96 Cal.Rptr. 594, 487 P.2d 1234], the California Supreme Court imposed a stricter duty upon prosecutors by requiring them to disclose substantial material evidence favorable to the accused without request.

Material evidence in this context is evidence "which 'tends to influence the trier of fact because of its logical connection with the issue.' [Citation.]" (*People* v. *Morris* (1988) 46 Cal.3d 1, 30, fn. 14 [249 Cal.Rptr. 119, 756 P.2d 843].) The duty to disclose evidence favorable to the accused extends to evidence which may reflect on the credibility of a material witness. (*People* v. *Ruthford* (1975) 14 Cal.3d 399, 406 [121 Cal.Rptr. 261, 534 P.2d 1341, A.L.R.4th 3132]; see also *Giglio* v. *United States* (1972) 405 U.S. 150, 153 [31 L.Ed.2d 104, 108, 92 S.Ct. 763].)

The above cited cases hold this duty on the part of the prosecution to disclose all substantial material evidence favorable to an accused at trial stems from the due process clause of the Fourteenth Amendment of the Constitution. The duty of disclosure, however, does not end when the trial is over. "[A]fter a conviction the prosecutor also is bound by the ethics of his office to inform the appropriate authority of after-acquired or other information that casts doubt upon the correctness of the conviction." (*Imbler* v. *Pachtman* (1976) 424 U.S. 409, 427, fn. 25 [47 L.Ed.2d 128, 141-142, 96 S.Ct. 984]; see also *People* v. *Gonzalez* (1990) 51 Cal.3d 1179, 1261 [275 Cal.Rptr. 729, 800 P.2d 1159]; rule 5-220, Rules Prof. Conduct of State Bar; ABA Model Code Prof. Responsibility, DR 7-103(B), EC 7-13; ABA Model Rules Prof. Conduct, rule 3.8(d).)[5]

In its amended return to petition for writ of habeas corpus, the Attorney General conceded that in May 1992 the District Attorney possessed exculpatory evidence, namely information that could have been used to impeach Mason's credibility. The amended return was filed with this court on April 13, 1993. Notwithstanding this concession, we allowed the referee's hearing

---

[5]Recently, the Ninth Circuit Court of Appeals found the prosecution had a duty to turn over exculpatory evidence relevant to a habeas corpus proceeding. (*Thomas* v. *Goldsmith* (9th Cir. 1992) 979 F.2d 746, 749-750.)

to go forward the following month because allegations of gross and intentional misconduct with respect to the nondisclosures have surrounded this case. Because of the nature of those allegations—which if substantiated could justify outright dismissal (see, e.g., *Barber* v. *Municipal Court* (1979) 24 Cal.3d 742 [157 Cal.Rptr. 658, 598 P.2d 818])—and the continuing public interest the case has generated, we believed it fitting to have a factual record established. We also note the Attorney General's concession in its amended return to petition for writ of habeas corpus did not extend to whether the Attorney General possessed exculpatory evidence when the stipulated partial reversal was negotiated.

Here, from the factual record that has been established in this court, it is abundantly clear that both prosecution agencies possessed exculpatory evidence during the course of the May 1992 negotiations to settle Garcia's appeal.

With respect to the District Attorney, the following information is uncontroverted: The District Attorney had been informed in 1991 by the CHP that Mason's findings in two cases had been found erroneous and a review of his methodology had shown it to be faulty. As a result, the CHP ordered Mason not to testify as an accident reconstruction expert without further education in the field; the District Attorney was so informed. The CHP provided the District Attorney with two lists of Mason's cases; both lists contained Garcia's case. The District Attorney's independent review of a dozen cases involving Mason revealed a significant number of errors by him with respect to speed calculations. This information *alone* clearly constituted evidence relating to Mason's credibility as the prosecution's chief expert witness with respect to Garcia's errant driving. Thus, this information *alone* constituted exculpatory evidence the District Attorney was obligated to turn over to Garcia. (*Giglio, supra,* 405 U.S. 150; *Ruthford, supra,* 14 Cal.3d 399.)

With respect to the Attorney General, it is uncontroverted that prior to May 14, 1992, the agency was aware that (1) Mason was no longer being used by the District Attorney as an accident reconstruction expert because his calculations had been erroneous in other cases reviewed, (2) Mason testified for the prosecution as an accident reconstruction expert in Garcia's case and a major issue on appeal was the failure of the trial court to allow the defense a continuance after Mason changed his speed calculations and (3) Garcia's counsel had no knowledge of the problems with Mason's speed calculations that came to light after the trial. Again, this evidence *alone* "leaves no room for doubt" that the Attorney General wrongfully deprived Garcia of exculpatory evidence bearing on the credibility of Mason. (*Morris, supra,* 46 Cal.3d 30, 31.)

In all probability, disclosure of this information by either or both of these prosecution agencies during the postconviction appeal period also would have led the defense to further investigate Mason's calculations in the underlying case rather than enter into a stipulation that conceded the validity of the conviction and renounced any further attack against the conviction.[6] In this regard, we stress the importance of the special obligations of prosecutors to promote justice and the ascertainment of truth in our court system. As the California Supreme Court said in *Ferguson, supra,* 5 Cal.3d 525, 531:

"The duty of the district attorney is not merely that of an advocate. His duty is not to obtain convictions, but to fully and fairly present to the court the evidence material to the charge upon which the defendant stands trial, and it is the solemn duty of the trial judge to see that the facts material to the charge are fairly presented. [Citations.] In the light of the great resources at the command of the district attorney and our commitment that justice be done to the individual, restraints are placed on him to assure that the power committed to his care is used to further the administration of justice in our courts and not to subvert our procedures in criminal trials designed to ascertain the truth.

"The search for truth is not served but hindered by the concealment of relevant and material evidence. Although our system of administering criminal justice is adversary in nature, a trial is not a game. Its ultimate goal is the ascertainment of truth, and where furtherance of the adversary system comes in conflict with the ultimate goal, the adversary system must give way to reasonable restraints designed to further that goal."

Similarly, the United States Supreme Court observed in *United States* v. *Agurs* (1976) 427 U.S. 97, 110-111 [49 L.Ed.2d 342, 353-354, 96 S.Ct. 2392]: "[T]here are situations in which the evidence is obviously of such substantial value to the defense that elementary fairness requires it to be disclosed even without a specific request. For though the attorney for the sovereign must prosecute the accused with earnestness and vigor, he must always be faithful to his client's overriding interest that 'justice shall be done.' He is the 'servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer.' [Citations.]" (Fn. omitted.)

In light of the foregoing principles, it is clear to us that the failure by the District Attorney and the Attorney General to disclose problems known about Mason to the defense at the time the stipulated partial reversal

---

[6]Experts chosen by both the defense and the District Attorney subsequently found errors in Mason's calculations in Garcia's case.

was being negotiated was a violation of due process. ▇▇ "[S]uppression of substantial material evidence bearing on the credibility of a key prosecution witness is a denial of due process . . . ." (*Ruthford, supra,* 14 Cal.3d at p. 408.) As the *Brady* court succinctly put it: "[T]he suppression by the prosecution of evidence favorable to an accused . . . violates due process . . . irrespective of the good faith or bad faith of the prosecution." (*Brady, supra,* 373 U.S. 83, 87 [10 L.Ed.2d 215, 218-219].)

We note that the petition for writ of habeas corpus and exhibits also contain serious allegations of bad faith misconduct by the prosecuting agencies in withholding the exculpatory evidence regarding Mason's credibility. We appointed a referee to supervise discovery, conduct an evidentiary hearing and make certain factual determinations regarding the allegations of intentional and gross prosecutorial misconduct. Over five days of hearings, the referee heard the testimony of twenty witnesses, including a member of the Attorney General's office who first raised claims of impropriety in this case. ▇▇ Because a referee has an opportunity to observe witnesses as they testify, the referee's findings resolving factual disputes are entitled to great weight. In *In re Hall* (1981) 30 Cal.3d 408, 416 [179 Cal.Rptr. 223, 637 P.2d 690], the Supreme Court noted: "Our standard of review in these circumstances is well settled: 'A referee's findings of fact are, of course, not binding on this court, and we may reach a different conclusion on an independent examination of the evidence produced at the hearing he conducts even where the evidence is conflicting. . . . However, where the findings are supported by "ample, credible evidence" . . . or "substantial evidence" . . . they are entitled to great weight . . . because of the referee's "opportunity to observe the demeanor of the witnesses and weigh their statements in connection with their manner on the stand . . ." ' (*In re Branch* (1969) 70 Cal.2d 200, 203, fn. 1 [74 Cal.Rptr. 238, 449 P.2d 174].)" (Citations omitted.) Here, there is substantial evidence to support the referee's determinations that (1) Mason did not falsify evidence or alter data in order to reach a predetermined result, (2) Garcia's case was not intentionally omitted from the list of cases reviewed by Longanbach and (3) neither prosecutorial agency entered into the stipulated partial reversal to intentionally conceal problems with Mason from Garcia. As long as there is substantial evidence to support the referee's determinations, they will be upheld. (*People v. Singer* (1990) 226 Cal.App.3d 23, 32 [275 Cal.Rptr. 911].)

Garcia faults the referee's findings as incomplete and claims the referee overlooked significant evidence and the inferences that could be drawn from such evidence. Obviously, the evidence here regarding the action and motives of the prosecutorial agencies is conflicting and could support a number of inferences. That is precisely why we appointed a referee—to establish a

record and resolve the factual disputes. As an appellate court, we are not in the factfinding business. Garcia's criticism ignores our established standard of review. ■ A reviewing court cannot substitute its evaluation of a witness's credibility for that of the fact finder. (*People* v. *Barnes* (1986) 42 Cal.3d 284, 304 [228 Cal.Rptr. 228, 721 P.2d 110].)

In sum, under well-settled principles of appellate review, we give great weight to the referee's factual determinations that during the negotiations of the stipulated partial reversal, the prosecuting agencies did not intentionally conceal evidence about Mason's problems as a witness. Accordingly, we conclude the record in this forum does not support allegations of gross and intentional misconduct that could justify dismissal of all charges.

■ However, a reviewing court need not defer to a referee's legal conclusions or conclusions on mixed questions of law and fact. As the Supreme Court noted in *People* v. *Ledesma* (1987) 43 Cal.3d 171, 219 [233 Cal.Rptr. 404, 729 P.2d 839], "a referee's resolution of mixed law-fact questions is generally subject to independent review as predominantly questions of law—especially so when constitutional rights are implicated."

Having accepted the referee's findings of fact, it is our duty to determine their legal effect. ■ We begin by noting "the prosecution's duty of disclosure extends to *all* evidence that reasonably appears favorable to the accused, not merely to that evidence which appears likely to affect the verdict." (*Morris, supra,* 46 Cal.3d 30, fn. 1, original italics.) ■ Our independent review of the record clearly shows the Attorney General and the District Attorney knew at the time of the negotiations (1) there were problems with Mason's methodology, (2) Mason was no longer being used as an expert witness and (3) Mason was a key witness at Garcia's trial. The duty to disclose evidence favorable to the accused extends to evidence that may reflect on the credibility of a material witness. (*Ruthford, supra,* 14 Cal.3d 399, 406.) Therefore, while we defer to the referee's factual determinations regarding whether the prosecutorial agencies intentionally withheld exculpatory evidence, we cannot accept the referee's legal conclusions that the agencies did not withhold exculpatory evidence.

■ Having established that Garcia was denied due process by the withholding of evidence on the credibility of Mason, we must still address whether these circumstances were so prejudicial as to require reversal. The *Chapman* reversible error standard applies. (*Chapman* v. *California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711, 87 S.Ct. 824, 24 A.L.R.3d 1065]; *Ruthford, supra,* 14 Cal.3d 399, 408.) ■ Under this test, "[a]n accused . . . . is entitled to relief in such circumstances unless we can declare a belief

that the denial 'was harmless beyond a reasonable doubt.' [Citation.]" (*Ibid.*) Thus, "[t]he defendant must make a showing of substantial materiality and even after this showing is made reversal is not required if the prosecution established the failure to was harmless beyond a reasonable doubt." (*Id.* at p. 409.)

The Attorney General argues that even if the jury had totally rejected Mason's testimony or if he had not testified at all, Garcia would still have been convicted of violating section 23153. Because we are not convinced beyond a reasonable doubt that is so, we must reverse the conviction.

Initially, we note the Attorney General's argument downplaying the importance of Mason's testimony does not comport with the trial record. Mason was the prosecution's accident reconstruction expert at trial. In addition to having Mason testify about Garcia's driving speed, the prosecutor relied upon Mason to overcome alleged errors in the report of a CHP officer who responded to the accident scene. Indeed, at one point in his closing argument, the prosecutor stressed the importance of relying upon Mason's expertise: "[B]ut in an accident this serious, we bring in an expert. We bring in a man like Ted Mason, who not only looks at those factors, but he looks at additional factors. He uses certain types of formulas, and he scientifically can put together how that accident occurred. And that's what happened here. He put together for you how the accident happened."

██ An element of the crime of driving under the influence and causing injury is the concurrent violation of a law or failure to perform a legal duty. (§ 23153; see also CALJIC No. 12.60.) ██ The prosecution's main theory was that Garcia violated the basic speed law (§ 22350) by driving at an unsafe speed for the conditions.[7] Mason's testimony went directly to this issue. Mason's testimony was the only evidence offered that Garcia exceeded the speed limit of 55 miles per hour. ██ While a violation of section 22350 does not require evidence that the posted speed limit was exceeded, such evidence certainly raises an inference that section 22350 was violated. The law recognizes this commonsense inference in section 22351, subdivision (b), which states speed in excess of the posted or legal limits is prima facie unlawful unless clearly proved otherwise.

██ Moreover, Mason's speed calculation in this case was *wrong*, as evidenced by the parties' posttrial investigations. Significantly, CHP Sergeant James Torpey, a team supervisor of MAIT, reviewed the case in

---

[7] As an alternative theory, the prosecution also argued Garcia made an unsafe lane change, violating section 22107. However, from our reading of the record, it was the section 22350 violation that was emphasized. For example, in his closing argument, the prosecutor labeled the unsafe speed for conditions violation (§ 22350) the "primary" violation. Moreover, the testimony of two CHP witnesses who determined the point of impact (Mason and Annette Hirschey) was in dramatic conflict on the facts underlying the unsafe lane change.

February 1993 at the request of the People. He found Mason's estimate of 56.1 miles per hour was too high, opining Garcia was driving between 35 and 45 miles per hour. Thus, Garcia was convicted on the basis of evidence that has now been demonstrated to be incorrect.

Nor can we conclude beyond a reasonable doubt that if Mason had not testified at all, the jury would have found Garcia had violated section 22350 by driving at an unsafe speed for the conditions. We note Simpson, the eyewitness, testified he was driving between 50 and 57 miles per hour that evening. Other than Mason's testimony, the evidence presented was Garcia was driving at a speed of 40 to 45 miles per hour.

Mason also testified that Garcia made an unsafe lane change in violation of section 22107. Therefore, eliminating Mason as a witness—as the Attorney General suggests for purposes of a harmless error test—would have significantly affected the quantum of proof presented to satisfy the section 23153 requisite element of a concurrent law violation under the prosecution's alternative theory. (See fn. 7, *ante*.)

Notwithstanding the Attorney General's effort in this proceeding to minimize the importance of Mason's trial testimony, we note expert witnesses often have a significant impact on juries. "[J]uries tend to give considerable weight to 'scientific' evidence when presented by 'experts' with impressive credentials." (*People* v. *Kelly* (1976) 17 Cal.3d 24, 31 [130 Cal.Rptr. 144, 549 P.2d 1240].) The court in *Kelly* went on to say " 'scientific proof may in some instances assume a posture of mystic infallibility in the eyes of a jury . . . .' " (*Id.* at p. 32, quoting *United States* v. *Addison* (D.C. Cir. 1974) 498 F.2d 741, 744 [162 App.D.C. 199].)

The Attorney General relies upon *Morris, supra,* 46 Cal.3d 1, for the proposition that the failure to disclose was harmless because the defense expert impeached Mason on several points. The reliance is misplaced for the cases are distinguishable. In *Morris,* the prosecution failed to disclose evidence of benefits given a prosecution witness in exchange for his testimony. However, despite this nondisclosure, the witness's "credibility was exposed to substantial impeachment." (*Id.* at p. 34.) Among other things, the witness had more than a dozen felony convictions and he admitted harboring a lethal animus against the defendant. (*Ibid.*) Moreover, the witness's testimony was largely corroborated by other evidence. (*Id.* at pp. 34-35.) Because of "the considerable amount of impeachment evidence presented" and "the independent corroboration" of the witness's testimony, the court in *Morris* concluded the nondisclosure could not have affected the result. (*Id.* at p. 35.) Here, however, contrary to the Attorney General's characterization, the

impeachment of Mason by the defense expert was not substantial. A review of the defense expert's testimony here amply demonstrates that there is no basis for comparing this case to the devastating impeachment of the prosecution witness in *Morris.* (*Id.* at p. 34.) Moreover, in rejecting the comparison, we find it quite significant that a major—if not the major—issue on appeal here was the trial court's refusal to grant a continuance to allow the defense expert to respond to Mason's changed speed calculations. Further, we note Mason, testifying on rebuttal, answered the bulk of the defense expert's criticisms. Finally, without belaboring the point, we note that *Morris* and this case also are not comparable on the amount of corroborating evidence.

The Attorney General argues that Mason's testimony was unnecessary to prove that Garcia's vehicle struck Acosta's vehicle before it was struck by the third vehicle. This argument misses the point. The issue here was whether Mason's testimony was crucial to proving the elements of section 23153.

In sum, we are not convinced beyond a reasonable doubt that Mason's testimony did not affect the result here. Accordingly, we cannot conclude that the failure to disclose was harmless beyond a reasonable doubt. (*Ruthford, supra,* 14 Cal.3d 399, 410.) Reversal is compelled.

 Garcia has sustained his burden of proving there is newly discovered and credible evidence that undermines the entire case of the prosecution. Relief by habeas corpus is therefore warranted. (*In re Hall, supra,* 30 Cal.3d 408, 417; see also Pen. Code, § 1473.)

Because our foregoing conclusion is dispositive of the issues before us, we need not consider Garcia's other claims raised in his petition and appeal.

### DISPOSITION

The petition for writ of habeas corpus is granted. The judgment is vacated and Garcia is remanded to the Superior Court of San Diego County. The previous order releasing Garcia on bail pending appeal shall remain in effect unless the superior court determines that changed circumstances require a different disposition. Upon finality, the clerk shall remit a certified copy of this opinion and order to the superior court for filing, and the Attorney General shall serve another copy thereof on the District Attorney in conformity with Penal Code section 1382, subdivision (a)(2). (*Hall, supra,* 30 Cal.3d 408, 435, fn. 9.)

The appeal is dismissed as moot.

Huffman, J., concurred.

**FROEHLICH, J.,** Concurring.—I concur in the disposition made by the majority, and also in the majority's recitation of the factual and procedural background of the case, as well as its analysis of the law. I write separately because I believe the majority has focused on the wrong issue in coming to its conclusion and has based its decision on an inappropriate ground.

Appellant and petitioner sought reversal of the trial court's judgment on either or both of the alternative grounds (1) that false evidence had been introduced in the trial which was substantially material on the issue of guilt (see Pen. Code, § 1473, subd. (b)(1)); and (2) that the prosecution had suppressed or withheld exculpatory evidence (citing *Brady* v. *Maryland* (1963) 373 U.S. 83 [10 L.Ed.2d 215, 83 S.Ct. 1194]). The majority, at page 1174 of its opinion, concludes that *Brady* error was made by reason of the withholding of exculpatory evidence and determines "on that ground" to reverse the conviction.

As detailed in the majority opinion, all activity by the district attorney or Attorney General which might be characterized as withholding or suppressing evidence took place *after* the trial had been completed and the defendant sentenced. The only impact upon Garcia's rights which might have been caused by the failure to advise of flaws in the expert testimony was (1) with respect to the stipulated dismissal of Garcia's appeal (which at that time had been approved by our court) or (2) the creation of a ground for the appeal.

The stipulated dismissal was set aside and the appeal reinstated.[1] Whatever potential existed for prejudice to Garcia because of entering into an imprudent agreement to dismiss his appeal was, therefore, remedied. As for the appeal, by the time it was ready for our review the information concerning the flawed expert testimony had been fully revealed. There was, therefore, no prejudice to Garcia in terms of his presentation of the appeal.

In other words, the temporary suppression or withholding of exculpatory evidence as a matter of fact has had no prejudicial effect whatever on Garcia's case. I agree that it was necessary for us to review in some detail the facts of the suppression, since a particularly egregious violation of the defendant's due process rights might have given rise to the sanction of complete dismissal. (*Barber* v. *Municipal Court* (1979) 24 Cal.3d 742, 760 [157 Cal.Rptr. 658, 598 P.2d 818].) However, the majority accepts the referee's finding that the failure to alert defense counsel to the expert's

---

[1]It is interesting to note that this action was taken by our court before receipt of the referee's report, and was not based on any finding of withholding of evidence from the defense. Our ground for setting the dismissal aside was our discovery that the stipulation had not been executed by the defendant.

shortcomings was unintentional and therefore concludes that such failure would not justify complete dismissal of the case. (Maj. opn., *ante*, p. 1182.) Since, therefore, no permanent harm was done to Garcia's case by the temporary lapse of disclosure, and no punitive measures need be taken against the district attorney or the Attorney General, there is no practical effect resulting from our finding of withholding of evidence. It certainly should not be grounds for reversing the judgment.

As the majority points out, however, principally in the course of its discussion of the prejudicial effect of the flawed expert testimony, there are good grounds for reversal. Convincing evidence produced in connection with the habeas corpus petition established that the expert's testimony of speed was inaccurate. His conclusion that Garcia's speed was between 55 and 65 miles per hour cannot be supported. As the majority concludes, this was key testimony which we must assume influenced the jury in reaching its verdict. This was "newly discovered and credible evidence which undermine[d] the entire case of the prosecution" (*In re Hall* (1981) 30 Cal.3d 408, 417 [179 Cal.Rptr. 223, 637 P.2d 690]) and hence warrants a reversal and new trial. I therefore agree that the judgment must be reversed and the case remanded on the ground of discovery of new evidence (the inaccuracy of the speed expert's testimony) which casts grave doubt upon the verdict.

Petitions for a rehearing were denied August 31, 1993, and respondent's petition for review by the Supreme Court was denied November 24, 1993.