Filed 10/11/23  P. v. Robinson CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE, | C096328 |
| Plaintiff and Respondent, | (Super. Ct. No. MAN-CR-FE-2020-0010421) |
| v. | |
| ANTONEYO DELVEKEO ROBINSON, | |
| Defendant and Appellant. | |

On April 1, 2022, a jury found defendant Antoneyo Delvekeo Robinson guilty of second degree murder (Pen. Code, § 187, subd. (a))[1] and gross vehicular manslaughter while intoxicated with prior convictions (§ 191.5, subds. (a), (d)).[2]  On May 9, 2022, the trial court

---

[1]  Undesignated statutory references are to the Penal Code.

[2]  The jury also found defendant guilty of driving under the influence (DUI) causing bodily injury (Veh. Code, § 23153, subd. (a)) and DUI with blood-alcohol content at or above 0.08 percent resulting in injury (Veh. Code, § 23153, subd. (b)) with additional bodily injury enhancements (§ 12022.7) for these counts.  However, the trial court vacated these convictions and struck their related enhancements after determining they were lesser included offenses of gross vehicular manslaughter.

1

sentenced him to two terms of 15 years to life, but stayed the manslaughter term pursuant to section 654.

Defendant appeals, arguing we must reverse his conviction for gross vehicular manslaughter because there is not substantial evidence he violated the basic speed law. Defendant further argues the prosecutor committed misconduct by making comments during closing argument invoking defendant's failure to testify. Because we conclude defendant has not shown prejudicial error, we will affirm.

BACKGROUND

At defendant's jury trial, the People presented evidence that defendant was in a long-term relationship with Alexis Butler, with whom he had children. Butler rented a Nissan Rogue for the couple to drive to and from work. Defendant took the car on the evening of September 18, 2020, and Butler thought he was driving to work his usual night shift. At some point in the evening, defendant picked up Ruby Godoy in the car and they drank alcohol together with other friends but without Butler. Defendant, Godoy, and others were drunk.

Jaskaran Singh worked with Federal Express and was driving a tractor-trailer with two trailers south on Interstate 5 (I-5) on September 19, 2020 in the early morning. The sun was out, the road was dry, and there was not much traffic. Singh was traveling 55 miles per hour in the slow lane when someone rear-ended him. Singh did not see the impact, but it was strong enough to throw Singh, who was wearing a seat belt, into the steering wheel and dashboard. Initially, he thought he had blown a tire but then saw the car behind him spinning. It ultimately came to rest in the median facing north. Singh opined the car had been "coming quite fast" when it hit him. Following the accident, Singh parked on the right-hand shoulder. He did not see who was driving.

Ramces Arevalo had also been driving south on I-5 when he saw a car spin off the road and into the center median. Arevalo pulled over and called 911. He saw defendant tending to an injured woman and heard defendant repeatedly state, "[s]he fell asleep."

2

Katrin Gustin was driving north on I-5 when she saw the car in the median and stopped to help. Gustin's sister called 911, while Gustin approached the car and saw defendant pulling a woman out the passenger side of the car. The bottom half of the woman's body was seated in the car, and defendant pulled her upper body with his hands hooked under her armpits. Gustin helped defendant completely remove the woman from the front passenger side of the car and laid her on the ground where Gustin initiated CPR. Gustin saw the car catch on fire and was beginning to move the woman when the California Highway Patrol (CHP) arrived. The CHP officer put out the fire and took over CPR.

Gustin spoke with defendant asking if he was hurt. Defendant stated, "Well, we shouldn't have been driving because there was drinking." Defendant told Gustin conflicting information about who was driving and eventually admitted he did not know what happened because he had been sleeping. Similarly, Gustin overheard defendant give others conflicting information about who had been driving the car.

The woman, Ruby Godoy, died at the scene from a torn aorta, which the coroner explained is a "deceleration injury" that occurs when someone traveling at a high rate of speed slows down "suddenly and rapidly." Godoy also suffered injuries to her face, scalp, and torso including an "impact injury" to her head.

CHP Officer Christopher Duncan arrived at the scene approximately nine minutes after he was dispatched. He observed the back left of the second Federal Express trailer had broken plastic and scraping. The front of the Rogue was damaged with a crumpled hood and broken windshield with long black hair consistent with Godoy's embedded in it. Both side and front airbags had deployed. The passenger seat belt was fully retracted, suggesting it was not worn during the collision; in contrast, the driver's seat belt was stretched, suggesting it had been worn. Officer Duncan opined the Rogue had been traveling in the left lane but then hit the tractor-trailer as it drove in the right lane.

CHP Officer Hector Davilla[3] interviewed defendant who said he was not driving, but had been sleeping when the accident occurred. Davilla observed the driver's seat in the Rogue was adjusted to defendant's height, and defendant had the car's key fob on his belt. Davila noted defendant's slurred speech, red/watery eyes, unsteady gait, and inability to stand up straight. Based upon these observations and other evidence suggesting defendant had been driving, Davilla arrested defendant for driving under the influence.

The blood test administered to defendant at the hospital following his report of injury showed his blood-alcohol content was 0.161 percent. Given defendant's weight, he would have had to consume approximately nine and one-half standard alcoholic drinks to achieve that blood-alcohol content. Defendant told the paramedic who transported him to the hospital that he had been wearing his seat belt during the accident.

Defendant told Butler during a recorded jail call he had consumed a few beers and two shots of Hennessy. Defendant did not know what he had hit because he fell asleep at the wheel and had lied to police, telling them Godoy was driving because defendant did not have a license. Defendant had been driving the car to pick up his brother from work so he could drive him home.

The parties stipulated defendant had been convicted of a felony prior to September 19, 2020, had suffered three prior convictions for DUI (Veh. Code, § 23152, subd. (b)), and had therefore been warned three times of the dangers associated with drunk driving and that if he continued to drive drunk and killed someone that he could be charged with murder.

---

[3] By the time of trial, Officer Davilla had retired. Nonetheless, we will refer to him by his title in effect at the time of the accident.

DISCUSSION

I

*The Basic Speed Law*

Defendant argues we must reverse his conviction for vehicular manslaughter because there is not substantial evidence he violated the basic speed law, an element of the gross vehicular manslaughter conviction as prosecuted. We disagree.

As our Supreme Court explained in *People v. Jones* (1990) 51 Cal.3d 294, 314, "[t]he proper test for determining a claim of insufficiency of evidence in a criminal case is whether, on the entire record, a rational trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] On appeal, we must view the evidence in the light most favorable to the People and must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.] [¶] Although we must ensure the evidence is reasonable, credible, and of solid value, nonetheless it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts on which that determination depends. [Citation.] Thus, if the verdict is supported by substantial evidence, we must accord due deference to the trier of fact and not substitute our evaluation of a witness's credibility for that of the fact finder."

Relevant to defendant's contentions on appeal, the trial court instructed the jury with the actual language of Vehicle Code section 22350 prescribing the basic speed law: "No person shall drive a vehicle upon a highway at a speed greater than is reasonable or prudent having due regard for weather, visibility, the traffic on, and the surface and width of, the highway, and in no event at a speed which endangers the safety of persons or property."

Defendant focuses his challenge on the lack of evidence in the record establishing the speed limit on the relevant portion of I-5 or any specific testimony estimating how fast he was traveling when the collision occurred. However, as we shall explain, this information—while relevant to a possible violation of the basic speed law—is not essential. Vehicle Code section 22350 does not require the establishment of a violation of a posted speed limit. (See *People*

5

*v. Garcia* (1993) 17 Cal.App.4th 1169, 1184 [establishing "a violation of [Vehicle Code] section 22350 does not require evidence that the posted speed limit was exceeded" but would raise an inference it was].)

Here, the People prosecuted defendant not on the theory that the speed limit on I-5 had been exceeded, but rather on the theory that defendant drove "at a speed which endangers the safety of persons or property." (Veh. Code, § 22350.) Prior to trial, the People explained they would show defendant's act of rear-ending a tractor-trailer violated the basic speed law. Expanding on this at closing, the People argued defendant rear-ended the tractor-trailer because he fell asleep behind the wheel due to his consumption of alcohol. Further, defendant's traveling at a rate of speed that endangered people and property was demonstrated by the truck driver's testimony establishing the forcefulness of the impact, the damage to defendant's car, and Godoy's injuries. We conclude substantial evidence supports the jury's determination that defendant violated Vehicle Code section 22350 under an endangering-the-public-and-property theory.

The record shows it was a clear, sunny morning with little traffic at the time of the incident. Singh drove southbound at 55 miles per hour and did not see any cars in front, behind, or to the side of him prior to the collision, supporting the inference, and Singh's testimony, that defendant had been "coming quite fast" when he hit the back of Singh's trailer. Further, the impact of the collision was substantial, throwing the seat-belted truck driver into the steering wheel and dashboard. In fact, Singh thought he had blown a tire, until he realized he had been struck by defendant's car. Finally, defendant's own admission establishes he was in the driver's seat, but sleeping when the collision occurred. It is axiomatic that the safe driving speed for operating a car while asleep is zero. (Cf. *People v. Farleigh* (2017) 13 Cal.App.5th Supp. 12, 15 [safe speed for driving a car without hands on the steering wheel is zero].) No testimony is necessary to establish this point. Accordingly, substantial evidence supports the jury's determination that defendant violated Vehicle Code

section 22350, and thus, defendant's challenge to his conviction for gross vehicular manslaughter while intoxicated fails.

## II

### *Prosecutorial Misconduct*

Defendant further argues the prosecutor committed misconduct by making comments during closing argument invoking defendant's failure to testify in violation of the Fifth Amendment as interpreted by *Griffin v. California* (1965) 380 U.S. 609 requiring reversal of both convictions. Taking the People's statements in context, and in light of the applicable standards, we find defendant has failed to demonstrate prejudicial misconduct.

A.    *Additional Background*

"A prosecutor's conduct violates the Fourteenth Amendment to the federal Constitution when it infects the trial with such unfairness as to make the conviction a denial of due process." (*People v. Morales* (2001) 25 Cal.4th 34, 44.) "Conduct by a prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial misconduct under state law only if it involves the use of deceptive or reprehensible methods to attempt to persuade either the trial court or the jury." (*Ibid*.) "Furthermore, and particularly pertinent here, when the claim focuses upon comments made by the prosecutor before the jury, the question is whether there is a reasonable likelihood that the jury construed or applied any of the complained-of remarks in an objectionable fashion." (*Ibid*.)

"In *Griffin*, 'the United States Supreme Court declared that the Fifth Amendment prohibits the prosecutor from commenting, either directly or indirectly, on the defendant's failure to testify in his defense.' [Citation] This prohibition does not, however, 'extend to comments on the state of the evidence, or on the failure of the defense to introduce material evidence or to call logical witnesses.' " (*People v. Turner* (2004) 34 Cal.4th 406, 419.) "Moreover, 'brief and mild references to a defendant's failure to testify, without any suggestion that an inference of guilt be drawn therefrom, are uniformly held to constitute harmless error.' " (*Id.* at pp. 419-420; see also *People v. Bloom* (2022) 12 Cal.5th 1008, 1055

(*Bloom*) [brief comment not overtly calling attention to the defendant's failure to testify constituted harmless error].)

Here, during closing argument, the prosecutor twice told the jury to follow the judge's instructions even if they conflicted with something the attorneys said. Thereafter, and in the midst of arguing the evidence that established that defendant had been driving the car, the prosecutor said: "Let's look at the injuries on both of these individuals. We heard about Ruby's injury. She has a left head abrasion. What you will notice on People's 5, and we have that coming up in a moment, there is no seat belt marks on her. You can look at that yourself. It's gruesome, I understand. But look for it. Wouldn't you expect to see if she was wearing a seat belt some kind of bruising or some kind of something on her shoulders or her neck area anywhere? No, we have a left head abrasion and a left side bruise. [¶] Let's think about that. Why do we think there is a left side bruise? Because we don't—we weren't in the car, right. *No one was in the car except for the defendant and Ruby Godoy. They are the only two people [who] could ever actually tell us*." (Italics added.) Defendant's unspecified objection to this statement was overruled and the prosecutor continued, arguing Godoy's bruises were consistent with her being the unsecured passenger in a deceleration injury scenario, while defendant's injuries were consistent with him wearing a seat belt.

Following the completion of the prosecutor's initial closing argument, defendant placed on the record his objection that the prosecutor committed misconduct by "referenc[ing] . . . his right not to testify in this case." The trial court disagreed, explaining: "The Court did not perceive it as a comment on [defendant's] right to remain silent. I perceive that as [the prosecutor] was indicating that the only two people [who] have a sense of what occurred on that day were the two people in the vehicle. It wasn't a specific reference to [defendant] failing to provide information to authorities or step up and talk to anybody or testify in regards [*sic*] to this case, so I do not find that it was a Griffen [*sic*] Doyle error."

8

Thereafter, the trial court instructed the jury, including: (1) that the jury must follow the law as explained by the court even in the face of conflicting information from the attorneys; (2) that "defendant has an absolute constitutional right not to testify" and that jury must not consider defendant's failure to testify for any reason (see CALCRIM No. 355); and (3) that "[n]either side is required to call all witnesses who may have relevant information about the case or to produce all physical evidence that might be relevant." (See CALCRIM No. 300.)

    B.    *Analysis*

Here, defendant argues the prosecutor's comments in closing argument that "[n]o one was in the car except for the defendant and Ruby Godoy"— that "[t]hey are the only two people [who] could ever actually tell us"— violated *Griffin* by highlighting that he was the only person remaining who could tell the jury what occurred at the time of the fatal collision, but had not testified. We concur with defendant that these comments are susceptible to an interpretation that would violate *Griffin* by indirectly invoking defendant's right not to testify. (See, e.g., *People v. Gioviannini* (1968) 260 Cal.App.2d 597, 605-606 [where the defendant and victim were the only people present at murder, arguing " '[o]f the several voices that we could hear in this case,' " the victim's voice has been stilled violated *Griffin*].) We therefore disagree with the trial court that these comments should be fairly characterized as being on the state of the evidence. Here, defendant was the only individual who could supply that evidence, thus bringing the comment within the purview of the *Griffin* prohibition. (*Gioviannini*, at pp. 605-606; see also *Bloom, supra*, 12 Cal.5th at pp. 1054-1055 [argument that the jury would never know what the defendant and his father were talking about implicated *Griffin* because the defendant was the only person who could testify to the contents of that conversation]; *People v. Vargas* (1973) 9 Cal.3d 470, 474-476 [People's argument, "And there is no denial at all that they were there" (italics omitted) violated *Griffin* because " 'denial' connotes a personal response by the accused himself"].)

9

However, we find it highly unlikely the jury construed the complained-of comments in a manner that prejudiced defendant. The comments were brief and came in the middle of the prosecutor's closing argument concerning the evidence establishing that the victim had been in the passenger seat and not wearing her seat belt. Nowhere in the argument did the prosecutor argue defendant's failure to take the stand and explain the inconsistencies in his many statements relayed during the People's case or that the jury should use defendant's failure to testify as evidence that he was indeed guilty of the crimes charged. That these statements did not imply guilt mitigates the possible harm from the prosecutor's ill-advised comment. (See *People v. Vargas, supra*, 9 Cal.3d at p. 478 [" 'A forbidden comment, however, is less likely to affect the "substantial rights" of a defendant . . . if that comment merely *notes* the defendant's silence and includes no suggestion that, among the various inferences which might be drawn therefrom, those unfavorable to the defendant are more probable' "].)

Moreover, the jury instructions specifically forbade the jury from utilizing defendant's failure to testify in this manner. In fact, both the prosecutor and the trial court specifically told the jury it was the judge's place to instruct the jury and that anything contrary to those instructions said by the attorneys must be ignored. The trial court then specifically told the jury not to hold defendant's failure to testify against him, nor to consider it in any way. We presume the jury understood and followed these instructions. (*People v. Sanchez* (2001) 26 Cal.4th 834, 852.) Defendant has not shown otherwise.

Finally, we disagree with defendant's suggestion that the case against him was "close." On the contrary, the primary issue in the case was whether defendant had been driving the car when the fatal collision occurred, and we find abundant evidence established that was the case: (1) defendant admitted to Butler and others that he was driving; (2) Godoy's hair was embedded in the passenger side of the windshield; (3) a witness observed defendant removing a seated Godoy from the passenger side of the car; (4) defendant admitted he used a seat belt and the seat belt evidence established only the driver's seat belt was engaged at the time of

10

the accident; (5) defendant had the key fob on his belt; (6) defendant's girlfriend rented the car for the couple's use; (7) defendant drove the car to work the day before; (8) the driver's seat was adjusted for his height; and (9) defendant was driving the car to pick up his brother from work that morning. Defendant's self-serving statements that he was not driving do little to challenge the substantial evidence to the contrary.

Moreover, the jury's requests for readbacks of testimony do not show otherwise. The jury likely reviewed testimony from multiple witnesses who had contact with defendant after the accident because the parties' closing arguments conflicted concerning the content of testimony relayed by those witnesses and the inferences that should be drawn therefrom. The jury's review of that testimony did not demonstrate doubt concerning defendant's ultimate guilt.

Accordingly, in light of the brief comment indirectly referencing defendant's silence, the trial court's instructions not to consider defendant's failure to testify, and the strength of the evidence against him, we conclude any *Griffin* error was harmless beyond a reasonable doubt. (*Bloom, supra*, 12 Cal.5th at p. 1055; *People v. Carter* (2005) 36 Cal.4th 1215, 1267; see also *People v. Bruce G.* (2002) 97 Cal.App.4th 1233, 1245 [brief, single comment without amplification and where the jury was instructed not to consider the defendant's failure to testify was harmless beyond a reasonable doubt].)

DISPOSITION

The judgment is affirmed.

/s/
_____
BOULWARE EURIE, J.

We concur:


/s/
_____
DUARTE, Acting P. J.


/s/
_____
KRAUSE, J.

11